WALDEN, Judge
(dissenting).
I respectfully dissent.
Supplementing and reminding:
1. This is a suit at law between Frey and' Strickland, the only litigants of record.. The case is still pending. Final judgment has not been entered as to the issues between' •them.
2. The judgment appealed was entered, in favor of Frey’s lawyer, J. Russell Horns-by, and against the defendant, Strickland,, on account of legal services rendered by Hornsby to Frey.
3. ’ Hornsby was not a party to the suit and never sought that status. He did not file any pleadings whatever in his own name- or right or pray for any relief. His claim,. . if it may be so designated, was:
(a) foreign to the issues in the case between Frey and Strickland,
*87 (b) never reduced to writing,
(c) never served upon Strickland.
4. The measure of damages used in arriving at the judgment was found in a contingent fee contract existing between Frey and Hornsby whereby Frey was to pay Hornsby 40% of the “gross proceeds of any recovery” gained in the suit against Strickland. Of course, Strickland was not a party to the contract.
5. Since the genesis of the judgment is not to be found in the pleadings and since it resulted from a “trial”, resort is had to the resulting findings of fact made by the trial court in an effort to locate the issues which spawned the award of attorney fees to a non-pleading non-party. It is there recited that the trial was based “on the issue as to the validity of the compromise and settlement made by and between the plaintiff and the defendant.” However, the fruit of the “trial” was the judgment appealed. Thus, the real undertaking was probably reflected in this trial colloquy:
“THE COURT: And we’ll refer to this— Mr. Hornsby here as petitioner in these proceedings, so as to keep the record clear as to whom we have reference to.
MR. ROTH: Mr. Frey is still a party to the suit, though, is he not ?
THE COURT: I would assume so, but the real parties in interest is attorneys seeking to get fees here. Let’s cut through the falderal.”
In this light, various avenues of elaboration reflecting fundamental reversible faults present themselves. In truth, the whole procedure or lack of it is so overwhelming as to make it difficult to know where to begin. Surely the total failure to observe the requirements of stating a claim cognizable at law and bringing the matter to issue for adjudication and judgment under the 1954 Florida Rules of Civil Procedure constitutes a denial of due process to appellant, Strickland. Further, there is the glaring lack of jurisdiction found in the fact that service of process was never obtained upon Strickland with reference to this new claim by a new party. Also, it is impossible to understand under the circumstances how a person can be the recipient of a money judgment during the course of someone else’s law case, when he is neither a party nor a pleader.
This dissent declines to catalog all the shortcomings and is content to discuss the law that has developed based on like fact patterns.
First, fundamental error was committed in permitting Hornsby to intervene somehow and assert his independent claim. Is this, though, simply a matter of form — could Hornsby come in after the fact and primp up the record by filing a motion to intervene and some sort of amendment to conform to the evidence? The answer is, “No.” Not only was Hornsby not a party to this proceeding, he was without standing to become a party and it was improper for Hornsby, either with or without a pleading, to intrude his collateral issue into the case in chief. Thus, the approval of this judgment is vio-lative of the law of this state as announced in Warshaw-Seattle, Inc. v. Clark, Fla.1955, 85 So.2d 623. There, under similar and more compelling circumstances, an attorney was in fact permitted to intervene with appropriate pleading. He showed that the parties settled a law case without the attorney’s knowledge and consent while the client-litigant had an outstanding obligation to pay the attorney a reasonable fee for his services. Trial was had and judgment entered for the lawyer. The Supreme Court of Florida disallowed the intervention, saying (at pages 625-626):
“ ‘Persons who are not parties of record to a suit have no standing therein which will enable them to take part in or control the proceedings. If they have occasion to ask relief in relation to the matters involved, they must either contrive to obtain the status of parties in such suit or they must institute an independent suit’ *88 39 Am.Jur., Parties, Sec. 55. ‘In our jurisprudence, the right of one to intervene in an action, suit, or proceeding between others is generally regarded as a purely statutory right, or a right of statutory origin, and as one which is to be exercised according to the statute authorizing it. * * * It was unknown to common-law procedure.’ 39 Am.Jur., Parties, Sec. 56.
“There was no statute or rule of court applicable to the case involved in this proceeding, and in the absence of such a statute or rule of court Florida follows the common law. It therefore follows that the intervention of Malcolm Lewis Kneale should not have been allowed.”
On rehearing granted in Warshaw-Seattle, Inc. v. Clark, supra, the court distinguished two cases relied on by the trial court in the instant case, namely, Mabry v. Knabb, 1942, 151 Fla. 432, 10 So.2d 330, and Miller v. Scobie, 1943, 152 Fla. 328, 11 So.2d 892. The comparisons which found the cases to be inapplicable will not be repeated here, other than to say that one of the cases was in equity where intervention is permitted by rule, and in the other the attorneys did not intervene but continued the suit in the name of their client. In short, interventions are not permitted in an action at law. 24 Fla. Jur., Parties, § 24.
The trial court here also cited one other case as supporting the action taken, Forman v. Kennedy, 1945, 156 Fla. 219, 22 So.2d 890. This suit is not helpful to this consideration because it was a separate independent suit brought by the lawyer in his own name against a public corporation for attorney fees.
Does the case of Sentco, Inc. v. McCulloh, Fla.1955, 84 So.2d 498, have any bearing upon the case sub judice? It, by way of obiter dictum, citing the case of Mabry v. Knabb, supra, and Miller v. Scobie, supra, announced a principle to the effect that an attorney will, in some circumstances, be permitted to continue a suit in the name of his client in order to recover his fee and costs after his client has made a fraudulent or collusive settlement intending to deprive his attorney of his fee and costs. As earlier mentioned, the Mabry and Miller cases were presented to the Supreme Court in support of a petition for rehearing in the later case of Warshaw-Seattle, Inc. v. Clark, supra, and there distinguished and found inapplicable to facts such as these. No exception can be taken to the proposition that under certain circumstances a lawyer may be permitted to continue the case in his client’s name as was done in the Mabry casein order to create a fund or res upon which they might later impose their attorney’s liens. The record before us in this case does not support any notion, even remotely, that Hornsby intended or achieved such result. The testimony of the trial, 168 pages in length, reflected no such purpose and there is no motion or other pleading so indicating. The proof is in the pudding. The judgment appealed was rendered in the name of Hornsby and not his client, Frey, and the award was based on his apparent claim for attorney’s fees and not on account of the merits of Frey’s cause of action.
Forasmuch as this court knows, a judgment for Frey may never be entered. If entered, it may be appealed and reversed and no recovery ever had. In this event no fund or res to which Hornsby might attach a lien would ever come into being. This writer is unable to find any basis whatever in the record to support a premise that, despite a little harmless procedural error, all that really happened in the trial court, in substance and result, was that Hornsby simply continued the case in Frey’s name after collusive settlement and created a fund or res and then asserted his lien for attorney’s fee.
The next point deals with the measure of damages employed in reaching the sum of $4,000.00 contained in the appealed judgment. As pointed out, no express contract or privity existed between Hornsby and Strickland. Assuming Hornsby was entitled to an award, it could only be based upon quantum meruit — the reasonable value *89 •of the services actually rendered. See 3 Fla.Jur., Attorneys at Law, § 56 et seq. .Different from this, the amount of the judgment was computed in accordance with the express contract between Frey and Hornsby (40% of the $10,000.00 verdict) with the court citing the case of Forman v. Kennedy, supra, as support for this procedure. This case is not authority for the ■stated proposition because of its materially •different facts. There, an attorney had a contingent fee contract with his client. He prosecuted the suit to final judgment. 'Thereafter, a compromise settlement of the judgment was made by the client over the lawyer’s protest, resulting in the creation of an actual fund. The attorney sued in his •own name to enforce an attorney’s lien •against the fund so created. The issue was whether the attorney’s fee, under those cir■cumstances, should be based upon the amount of the judgment or upon the amount of the settlement with the court deciding there that the amount of the judgment was -the proper base for measure.
There is some question as to whether or not errors have been exactly presented to this court for review. This writer does not assay the merit of this because where, as here, a jurisdictional or other fundamental error of law is apparent on the face of the record the court is specifically authorized to consider it. Rule 3.7 (i), Florida Appellate Rules, 31 F.S.A. In fact, it is the court’s duty to do so in the interest of justice. See 2 Fla.Jur., Appeals, .'§ 287.
For clarity, this dissent does not undertake to express opinion as to whether or not the settlement between the parties constituted a fraud upon Hornsby. Neither does it express opinion as to possible remedies that Hornsby might have pursued, such as prosecuting the case to final conclusion in Frey’s name so as to possibly •create a fund to which an attorney’s lien might be affixed. Neither is an opinion expressed as to possible merit in an independent suit by Hornsby against Frey or Strickland for his fees.
It is apparent that the circumstances of the case somehow obscured from the court and counsel the basic guidelines of the law. It is this consideration which underlies this dissent and prompts the respectful reminder, based on obvious professional reasons important to bench and bar, that the collector of attorney fees should be held to a careful and precise observance of the law and not permitted to shortcut or ignore established procedures.
For these reasons I would reverse.